UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JOSHUA MICHAEL BECHTLOFF, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 25-158-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| FRANK BISIGNANO, Commissioner of | ) | **MEMORADUM OPINION** |
| Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Joshua Michael Bechtloff appeals the Social Security Administration's denial of his claim for Disability Insurance Benefits ("DIB") and Supplemental Social Security Income ("SSI"). [Record No. 8] He contends that the Administrative Law Judge ("ALJ") assigned to his case erred by failing to adequately evaluate the prior administrative medical findings of State agency psychological consultants and the consultative psychological examiner's opinion in assessing mental limitations as part of the residual functional capacity ("RFC") finding. [*Id.*] After reviewing the record and considering the parties' arguments, the Court concludes that the ALJ's decision is supported by substantial evidence. Therefore, the Commissioner's motion for judgment [Record No. 12] will be granted while Bechtloff's motion [Record No. 8] will be denied.

**I. Background**

Joshua Michael Bechtloff was 22 years old at the alleged onset date of disability. [Record No. 7 at 28, 189] He has a high school education and prior work experience as a retail

-1-

sales associate, cinema staffer, and customer service agent. [*Id.* at 29, 221–22] Bechtloff alleged that he became disabled beginning October 31, 2017, due to the following medical conditions: "1. Depression; 2. Anxiety; 3. Diagnosed on the Schizophrenia Spectrum—Schizoid" [*Id.* at 184, 189, 220] On May 6, 2022, Bechtloff filed applications for DIB and SSI under Titles XVI and II of the Social Security Act ("Act"). [*Id.* at 22, 87, 184]

ALJ Michael Kaczmarek held administrative hearings on September 19, 2023, and February 1, 2024. [*Id.* at 36–65] Thereafter, he issued an opinion denying Bechtloff's claim for benefits. [*Id.* at 19–30] On March 26, 2025, the Appeals Council denied Bechtloff's request for administrative review of the ALJ's decision, thereby making it the final decision of the Commissioner. [*Id.* at 6–10] The matter is ripe for judicial review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. Standard of Review

A "disability" under the Social Security Act ("Act") is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's disability determination is made by an ALJ in accordance with "a five-step sequential evaluation process." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

> First, the claimant must demonstrate that [he or she] has not engaged in substantial gainful activity during the period of disability. Second, the claimant must show that [he or she] suffers from a severe medically determinable physical or mental impairment. Third, if the claimant shows that [his or her] impairment meets or medically equals one of the impairments listed in 20 C.F.R.

>Pt. 404, Subpt. P, App. 1, [he or she] is deemed disabled. Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform [his or her] past relevant work, in which case the claimant is not disabled. Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as [his or her] age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.

*Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 399 (6th Cir. 2018) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

A district court's review is limited to determining whether the ALJ's findings are supported by substantial evidence[1] and whether the ALJ applied the proper legal standards in reaching his or her decision. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). A reviewing court is further limited in that it is not empowered to conduct a *de novo* review, resolve conflicts in evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). If the court finds substantial evidence to support the Commissioner's judgment, it must affirm that decision even if it would have decided the matter differently, and even if substantial evidence also supports the opposite conclusion. *Id.* at 714.

### III. Analysis

The ALJ applied the proper legal standards in reaching his opinion by conducting the five-step analysis required for evaluating social security disability cases. [Record No. 7 at 23–30] At step one, the ALJ determines if a claimant is engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity occurs when a claimant

---

[1] Substantial evidence is defined as such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

performs significant physical or mental activities for pay or profit.  20 C.F.R. §§ 404.1572(b). The ALJ found that Bechtloff had not engaged in substantial gainful activity since his October 31, 2017, alleged disability onset date.  [Record No. 7 at 24] He also found that Bechtloff met the insured status requirements of the Act through September 30, 2018.  [*Id.*]

At step two, the ALJ determines whether a claimant has a medically determinable impairment that is severe or a combination of impairments that collectively are severe.  20 C.F.R. §§ 404.1520(c), 416.920(c).  In this case, the ALJ designated that Bechtloff has the following severe impairments: major depressive disorder, generalized anxiety disorder, personality disorder, and post-traumatic stress disorder.  [Record No. 7 at 25]

Step three requires the ALJ to ascertain if the claimant has an impairment or combination of impairments that are of severity sufficient to meet or equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.  At this step, the ALJ found that Bechtloff's medical impairments did not meet or medically equal the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [Record No. 7 at 25–26]

The ALJ considers at step four whether a claimant has an RFC to perform his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  Here, the ALJ found, after careful consideration of the entire record, that Bechtloff has the RFC to perform a full range of work at all exertional levels, with the following nonexertional limitations:

> the claimant can understand, remember, and carry out detailed but uninvolved instructions; work duties and any changes must be explained, written and/or demonstrated and could be learned in 30 days or less; work must not have strict production rates such as assembly line work or hourly time quotas; the claimant can occasionally interact with others; claimant must avoid all exposure to hazards such as moving machinery and unprotected heights.

[Record No. 7 at 26] The ALJ also determined that Bechtloff had no past relevant work. [*Id.* at 28]

At step five, the ALJ determines whether the claimant can do any other work considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). ALJ Kaczmarek determined that "[c]onsidering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." [Record No. 7 at 29] Including occupations such as a store laborer, packer, and marker. [*Id*.] As a result, the ALJ found that Bechtloff was not "disabled" within the meaning of the Act, from October 31, 2017, through the date of his decision. [*Id.* at 30]

**(1) Evaluation of Dr. Jeannie Nunez and Dr. Michelle D. Bornstein's Medical Opinions**

Bechtloff argues that the ALJ failed to properly evaluate or explain the limitations identified by the Commissioner's own medical sources, resulting in an unsupported and erroneous RFC. [Record No. 8 at 10] He contends that the ALJ effectively rejected every medical opinion in the record and failed to explain how he assessed the supportability and consistency of each opinion, as required by the regulations [*Id.* at 11]

Bechtloff challenges the ALJ's treatment of the state agency consultants' opinions. [*Id.* at 11–13] He highlighted that both state consultants (Dr. Nunez and Dr. Bornstein) found that he is limited in his capacity to understand, remember, and carry out "detailed instructions," but that he "should" be able to work with "short simple instructions." [*Id.* at 12 (citing Record No. 7 at 78–79, 94–95] They also determined that Bechtloff's ability to interact with the public, get along with coworkers, and accept instructions from supervisors was impaired, though he

"should" be able to ask simple questions in a work environment. [*Id.* (citing Record No. 7 at 78–79)]

Bechtloff asserts that although the ALJ referenced the supportability and consistency factors, he failed to comply with the regulatory requirements to explain how those factors were considered. [*Id.* at 12 (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2))] He argues that relief is warranted because ALJ Kaczmarek did not identify evidence demonstrating any inconsistency between the medical opinions and the record. [*Id.*]

The Commissioner argues in response that the ALJ appropriately considered these medical assessments considering the overall record, including the objective medical evidence, Bechtloff's mental healthcare treatment history, and his subjective reports and testimony regarding the nature and extent of his symptoms. [Record No. 12 at 4] He also maintains that the ALJ's findings regarding the persuasiveness of the opinion are supported by substantial evidence and argues that Bechtloff did not carry his burden to prove that the ALJ's RFC finding was unsupported by substantial evidence. [*Id.*]

Medical opinions' supportability and consistency "are the most important factors [ALJs] consider when [they] determine how persuasive [they] find a medical source's medical opinions." 20 C.F.R. § 404.1520c(b)(2). The supportability determination is defined in this way: "[t]he more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that medical opinion." 20 C.F.R. § 404.1527(c)(3). And "[t]he better an explanation a source provides for a medical opinion, the more weight [the ALJ] will give that medical opinion." *Id.*

Stated differently, the supportability factor provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to

-6-

support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 4041.520c(c)(2). And the more "consistent" a medical opinion is with the evidence from other medical and nonmedical sources in the record, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2). To be sure, the consistency factor "requires the ALJ to compare the medical opinion at issue to other medical and nonmedical sources." *Elizabeth A. v. Comm'r of Soc. Sec.*, No. 2:22-cv-2313, 2023 WL 5924414, at *4 (S.D. Ohio Sept. 12, 2023) (citation modified).

State medical consultant Dr. Nunez determined in August 2022 that Bechtloff had moderate limitations in his ability to understand and remember detailed instructions, but no significant limitations in remembering locations and work-like procedure or in understanding and remembering very short and simple instructions. [Record No. 7 at 78] Regarding sustained concentration and persistence, Dr. Nunez found moderate limitations in Bechtloff's ability to carry out detailed instructions, maintain attention and concentration for extended periods, and complete a normal workday and workweek without psychologically based interruptions or an unreasonable number or length of rest periods. [*Id.*] However, the doctor found no significant limitation in Bechtloff's ability to carry out very short and simple instructions; perform activities within a schedule; maintain regular attendance and punctuality; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without distraction; or make simple work-related decisions. [*Id.*]

With respect to social interactions, Dr. Nunez assessed moderate limitations in Bechtloff's ability to interact appropriately with the public, accept instructions and respond appropriately to supervisory criticism, and get along with coworkers without exhibiting behavioral extremes. [*Id.* at 79] However, she found no significant limitations in Bechtloff's

ability to ask simple questions or request assistance, maintain socially appropriate behavior, or adhere to basic standards of neatness and cleanliness. [*Id*.] As to adaptations, Dr. Nunez concluded that Bechtloff is moderately limited in his ability to respond appropriately to changes in the work setting but not significantly limited in his ability to recognize workplace hazards and take appropriate precautions, travel to unfamiliar places or use public transportation, or set realistic goals and make independent plans. [*Id.*] In November 2022, upon reconsideration, Dr. Michelle D. Bornstein reviewed additional medical evidence but concluded that it did not alter Dr. Nunez's initial assessment. [*Id.* at 91–95]

After stating that he had "fully considered the medical opinions and prior administrative medical findings," the ALJ found the opinions of Dr. Nunez and Dr. Bornstein unpersuasive. [Record No. 7 at 27] In so doing, ALJ Kaczmarek evaluated the supportability of those opinions, explaining that the State agency psychological consultants "included no *rationale* or explanation for their specific findings." [*Id.* (emphasis in original)] He further observed that the consultants generally listed vague limitations, such as stating that Bechtloff "may have moderate difficulties completing a normal work day/week w/out interferes from psych symptoms." [*Id*. at 27–28]

ALJ Kaczmarek also assessed the consistency of the consultants' opinions with the broader evidentiary record. Although the consultants limited Bechtloff to simple tasks, the ALJ noted that earlier cited mental status examinations generally showed intact attention, memory, and concentration, and emphasized that the record showed Bechtloff was writing a book. [*Id.* at 28] Earlier in the opinion, ALJ Kaczmarek explained that the record did not support additional limitations, aside from restrictions requiring no fast-paced work, limited workplace changes, and minimal social interactions. [*Id.* at 27] In support, he discussed

numerous mental status examinations showing largely normal finding, including normal attention concentration, memory, grooming, speech, thought content, intelligence, and judgment. [*Id.* (citing Record No. 7 at 334, 337, 339–342, 344-46, 351 (Lexington Counseling and Psychiatry progress notes dated 11/30/17 through 4/30/18); 354, 361 (UK Healthcare Psychiatry office treatment records dated 5/6/19 through 6/4/19); 387, 389 (Ridge Behavioral Health System office treatment records dated 10/8/19 through 10/28/19); 393-95, 397, 400, 402-404, 406, 410, 413, 415, 420, 423, 425-27, 429, 432-33, 438, 440-41, 444, 446, 448, 450, 453, 455, 458 (Lexington Counseling and Psychiatry progress notes dated 9/17/18 through 3/25/20); 1062-63, 1068-69, 1073-74 (Lexington Counseling and Psychiatry progress notes dated 9/17/18 through 3/25/20); 478, 483, 491 (Progress notes by Geoff Wilson, LCSW from May through July 2020); 1104-05 (9/1/23 Mountain Comprehensive Care (MCC) progress notes); 1117-16, 1121-22, 1125, 1129-30, 1196-97, 1209-10 (MCC progress notes dated September through December 2023)] The ALJ also noted that Bechtloff did not take prescription medication for much of the relevant period, but resumed medication in late 2023, after which treatment notes documented improvement, increased energy, and reports that the claimant had been reading several books. [Record No. 7 at 27]

The ALJ also considered non-medical evidence when evaluating consistency. He addressed third-party statements from Bechtloff's mother (Bonnie Carrington) who reported social withdrawal, difficulty with crowds, and problems handing changes in routine. [*Id.*] The ALJ found these statements generally consistent with Bechtloff's anxious and depressive issues and accounted for them through limitations on pace, change, and social interaction. [*Id.*] However, the ALJ also identified inconsistencies within Carrington's report. Although she stated that Bechtloff could only pay attention for five to twenty minutes, the ALJ noted that

mental status examinations consistently showed intact attention and concentration. [*Id.*] The ALJ further emphasized that Carrington reported Bechtloff could follow short instructions, care for a pet fish, write a book, manage finances, and use a checkbook—activities that could undermined the degree of limitation suggested by the State agency consultants. [*Id.* (citing Record No. 7 at 268, 270)]

Taken together, the ALJ's analysis reflects proper consideration of the supportability and consistency factors. ALJ Kaczmarek cited more than a dozen exhibits and explained how the State agency consultants' opinions lacked supporting rationale and conflicted with substantial medical and non-medical evidence in the record. The ALJ's explanation sufficiently demonstrates how other evidence contradicted those opinions and justified finding them unpersuasive.

Although Bechtloff argues that the ALJ's explanation was inadequate, the ALJ was not required to adopt the limitations Bechtloff preferred or to discuss the evidence in greater detail than necessary. The ALJ was required only to "explain how [he] considered the supportability and consistency factors," 20 C.F.R. § 404.1520c(b)(2). The relevant inquiry is whether the ALJ's persuasiveness discussion permits meaningful judicial review. *Eckert v. O'Malley*, No. 22-CV-316, 2024 WL 841765, at *5 (E.D. Ky. Feb. 28, 2024) (citing *Terhune v. Kijakazi*, No. 21-CV-37, 2022 WL 2910002, at *3 (E.D. Ky. July 22, 2022)). Here, the ALJ provided an adequate discussion that enables meaningful review and demonstrates that his determination was supported by substantial evidence. Therefore, the Court is not at liberty to "second-guess" this decision "as long as the ALJ cited substantial, legitimate evidence to support [her] factual conclusions," as he did here. *Ulman*, 693 F.3d at 714.

**(2) Evaluation of Dr. Edd Easton-Hogg's Medical Opinion**

Bechtloff also contends that the ALJ failed to explain how he evaluated the supportability and consistency of Dr. Easton-Hogg medical opinion, in which Dr. Easton-Hoggs concluded that Bechtloff has a severely limited capacity to respond appropriately to interactions with others and moderately limited ability to understand, remember, and carryout even "simple instructions." [Record No. 8 at 12 (citing Record No. 7 at 1080)] Bechtloff further argues that the ALJ offered no explanation for implicitly rejecting the remaining limitations assessed by Dr. Easton-Hogg. [*Id.* at 14 (citing *see Dunlap v. Comm'r of Soc. Sec.*, No. 20-4179, 2021 WL 5371401, at *7 (6th Cir. Sept. 20, 2021))] He emphasized that all three medical experts reached consistent conclusions that were uncontradicted by any medical professional and that directly undermine the ALJ's lay assessment that Bechtloff can interact with others for up to one third of the workday, follow detailed instructions, and do so in the naturally stressful work environment on a regular and sustained basis. [*Id.*] And he maintains the ALJ's reliance on "unelaborated reference to seemingly unrelated activities" does not justify the ALJ's decision. [*Id.*]

For the same reasons discussed above in concluding that the ALJ reasonably found the state agency consultants' opinions unpersuasive, the ALJ also reasonably found unpersuasive the opinion of consultative examiner Dr. Easton-Hogg that Bechtloff had marked limitations in social interaction and tolerating the pressures of work activities. [Record No. 7 at 28; *see* Record No. 7 at 1080.] In reaching this determination, the ALJ acknowledged that treatment records documenting sadness and anxiety, along with statement from Bechtloff and his mother describing difficulties with interaction and sensitivity to stress, supported the existence of some issues in these areas of mental functioning. [*Id.*] However, as the ALJ explained, Dr. Easton-

Hogg's mental status examination, while noting a sad mood and problems with decision-making, also documented normal speech, attitude, and judgment, as well as "fair" insight. [*Id*; *see* Record No. 7 at 1079–80.]

The ALJ further identified substantial evidence inconsistent with Dr. Easton-Hogg's assessment of marked limitations, including numerous largely unremarkable mental status examinations and Bechtloff's reported activities and abilities, including managing a bank account, paying bills, shopping, caring for pet fish, and writing a book. [*Id.* (citing Record No. 7 at 236 (Bechtloff's function report); 268–69 (Third-party function report from Bechtloff's mother); 334, 337, 339–342, 344-46, 354, 361, 393-95, 397, 400, 402-404, 406, 410, 413, 415, 420, 423, 425-27, 429, 432-33, 438, 440-41, 444, 446, 448, 450, 453, 455, 458, 1062-63, 1068-69, 1073-74, 478, 483, 491, 1104-05, 1117-16, 1121-22, 1125, 1129-30, 1196-97, 1209-10 (mental health treatment notes)]  Thus, the ALJ's evaluation of Dr. Easton-Hogg's opinion complied with the applicable regulations. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (supportability); 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) (consistency).

Finally, Bechtloff' argument that the ALJ failed to explain his implicit rejection of the remaining limitations assessed by Dr. Easton-Hogg lacks merit.  The ALJ expressly found no additional limitations beyond those included in the RFC—specifically, work in an environment with no fast-paced requirements, limited change, and little social interaction—were warranted considering the medical and non-medical evidence he cited and discussed in the opinion. [Record No. 7 at 26–28] In this case, the ALJ provided an adequate discussion that enables meaningful review and demonstrates that his determination was supported by substantial evidence.  And as noted previously, the Court is not at liberty to reweigh the evidence or

substitute its judgment, even if substantial evidence might also support a contrary conclusion. *See Ulman*, 693 F.3d at 714.

## IV. Conclusion

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. Plaintiff Joshua Michael Bechtloff's motion for judgment [Record No. 8] is **DENIED**.

2. Defendant Commissioner of Social Security's motion for judgment [Record No. 12] is **GRANTED**.

3. This action is **DISMISSED** and **STRICKEN** from the docket.

Dated: February 2, 2026.

<u>Danny C. Reeves, District Judge</u>
United States District Court
Eastern District of Kentucky